JUDGE LYNCH

353-08/PJG/PLS
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)
Pamela L. Schultz (PS 8675)



08 CV 6378

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRIARWOOD CORPORATION,

                        Plaintiff,

   - against –

GERMAN LINES LTD., ATLANTIS MARITIME
S.A., and ANNAKI CORPORATION, and MICHAEL
MAILLIS and DIANA SUDACOVA, as individuals,

                       Defendants.
------------------------------------------------------------x

**VERIFIED COMPLAINT**

      Plaintiff, Briarwood Corporation (hereinafter "Briarwood"), as and for its Verified Complaint against the named Defendants alleges upon information and belief as follows:

      1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

NYDOCS1/307407.1

2. At all times material hereto, Plaintiff Briarwood was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 6 Rue Bellot, 1204 Geneva, Switzerland.

3. At all times material hereto, Defendant GERMAN LINES LTD. (hereinafter "German Lines") was and still is a foreign business entity purportedly organized and existing under the laws of United Kingdom with a purported address at Suite B, 29 Harley Street, London, W1G 9QR, United Kingdom, but no actual or physical presence at that location.

4. At all times material hereto, ATLANTIS MARITIME S.A. (hereinafter "Atlantis") was a foreign business entity previously organized and existing under the laws of Greece but which authorization as a business or corporate entity had lapsed as of 2006 (which thereby effectively rescinded its status as a corporate entity) but which nevertheless carried on business in that name through its principals and as purported agent for Defendant German Lines, with no present address known other than through its principals described below.

5. At all times material hereto, ANNAKI CORPORATION (hereinafter "Annaki") was and still is a shell or fictitious business entity organized and existing under the laws of the State of Delaware and which has been described as a purported majority shareholder and director of Defendant German Lines but with no true corporate existence and with a purported business address at a residence in Ohio.

6. Defendants Michael Maillis (hereinafter "Maillis") and Diana Sudacova (hereinafter "Sudacova") (collectively "the Defendant Individuals"), were natural persons who were the alter egos of and principals behind the corporate entities described herein and who claimed to operate from a residence at 464 Sycamore Dr., Campbell, Ohio.

**Factual Background**

7. At all times relevant hereto Plaintiff Briarwood was the owner of the M/V RHOSUS.

8. On or about May 5, 2008, Briarwood as Owners and German Lines, as Charterer, entered into a maritime contract of charter party for the charter of the M/V RHOSUS for a period of 60 days with an additional 10 days at Charterers' option for a voyage with delivery at Busan and redelivery at any Turkish port.

9. Under the terms of the charter party, hire was payable every 30 days in advance and German Lines was obligated to pay for bunkers for the vessel's voyage together with other expenses. A copy of the fixture recap setting forth the charter agreement is attached as **Exhibit A.**

10. Pursuant to the terms of the charter, Plaintiff Briarwood duly delivered the vessel into German Lines' service, and the vessel was directed to proceed to the port of Xingang, China for loading of a cargo of cranes for transport to Tunis.

11. The vessel transited to the loadport where the cargo was loaded, but unbeknownst to Plaintiff, fraudulent bills of lading were issued by, on behalf of or with the involvement of German Lines or others acting on its behalf, showing an earlier load date which may have the effect of compromising certain of the Plaintiff's rights with respect to its ability to exercise a lien and/or recover for the non-payment of hire and other expenses incurred in performing the voyage.

12. The vessel is presently performing the voyage, but Defendant German Line remains in default in respect to its obligations to pay the hire, and has not paid for bunkers or any other expenses associated with this charter or the ongoing voyage.

13. Through an exercise of a lien on subfreight, a certain portion of sums due for the performance of the subject charter have been recovered from a sub-charterer, Shanghai China Base Shipping, but after credit for that payment, Plaintiff Briarwood calculates that there will still be due and owing the sum of $369,750 for the completion of the performance of the voyage and the default of German Lines in respect of its nonpayment of hire, fuel oil, etc.

14. Plaintiff Briarwood currently calculates that the completion of the voyage to Tunis, the discharge of the cargo there and the redelivery of the vessel as per the terms of the charter (to a port in Turkey) will necessitate that the vessel be operated up through and including August 25, 2008 for a total of 77 days on hire resulting in a claim for hire of $365,750, and the expense of the bunkers to be consumed on this voyage (including the repositioning voyage) will be $180,000, against which Plaintiff has recovered the sum of $176,000 leaving the net anticipated loss as outlined in paragraph 13 above of $369,750.

15. Despite German Lines' obligations to pay the sums due under the charter party, no amounts have been paid by German Lines whatsoever.

16. German Lines was recently caused to be formed by the individual defendants and is a shell entity designed and created to insulate them from liability for their acts and commercial conduct.

17. Specifically, German Lines corporate filings reveal that it was formed in March of 2008 with only minimal capital (£1,000) which is grossly inadequate in the context of a corporate entity engaged in worldwide chartering transactions.

18. In addition, it lists as its registered office an office suite on Harley Street in London which is in fact the business address for the corporate formation agent who ostensibly filed the

registration papers but Defendant German Lines has no discernable office or business presence in the United Kingdom.

19. Defendant German Lines ostensibly operates through its "agent" Defendant Atlantis which is a corporate entity previously registered to do business under the laws of Greece but which authorization lapsed in 2006 and which name has been utilized by the Defendants herein as a fictitious intermediary to further insulate themselves from liability.

20. The purported directors and shareholders of Defendant German Lines consist of the Individual Defendant Diana Sudacova who, on information and belief, is the wife of Defendant Maillis, and Defendant Annaki which is described as a corporation with an Ohio presence but which has no Ohio corporate existence or authorization based upon investigation with the Ohio Secretary of State, and a search of the web reveals that an entity with a similar name operates in the capacity as some form of a painting contractor at or near the Ohio and Illinois area, but with no corporate existence in Illinois either.

21. The prime movers and controllers of Defendant German Lines include the individual Defendants who formed or caused to be formed German Lines as a shell corporation for purposes of shielding themselves from personal liability and who operate the corporate defendants as a common enterprise with overlap of shareholders and directors, from a common location at 464 Sycamore Dr., Campbell, Ohio, and transact business through email utilizing the Defendant Atlantis as the purported intermediate agent when in fact there is but one enterprise manipulated and controlled by the Individual Defendants without any true corporate existence by the corporate defendants and a lack of arms length relationship between the Individual Defendants and the corporate defendants.

22. On information and belief, Individual Defendant Diana Sudacova maintained bank accounts and held funds on behalf of one or more of the corporate defendants herein and was the marketing agent of Defendant Atlantis.

23. The 2007 annual report filed by Annaki with the Delaware Division of Corporations identifies only one officer, Individual Defendant Diana Sudacova, with the address on Sycamore Drive in Campbell, Ohio.

24. On information and belief, Individual Defendant Michael Maillis conducted business on behalf of Defendant German Lines, and was an employee of Defendant Atlantis.

25. By virtue of the foregoing, each of the Defendants is and should be considered the alter-ego of the others and therefore liable for the debts and obligations of the nominal and shell defendant German Lines which the defendants have propped up as a corporate entity but which has no true and sustainable corporate form.

26. Briarwood has or is about to commence proceedings under the provisions of the charter for recovery of the sums due as aforesaid.

27. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable.

28. Plaintiff calculates that interest at the rate of 8% until the estimated time of completion of the arbitration between the parties in two years will total $65,000 and that fees and costs in prosecuting the claim will total $100,000.

29. This action is brought to obtain jurisdiction over Defendant GERMAN LINE as well as the other alter-ego defendants in order to compel them to arbitrate for the debts arising from

their breach of charter and to obtain security in favor of Plaintiff Briarwood in respect to its claims against the Defendants and in aid of arbitration proceedings.

30. Upon information and belief, and after investigation, none of the Defendants can be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendants or any number of them (hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

31. As outlined above, the damages which have and will be suffered as a consequence of the aforementioned breach of charter, net of the interim recovery against the payment of sub-freight, totals $369,750, and with interest and costs as set forth above, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Briarwood against each Defendant is $534,750.

WHEREFORE, Plaintiff Briarwood prays:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against them in the principal amount of $369,750, plus interest, costs and attorney fees;

b. That since Defendants cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendants, up to and including the sum of **$534,750,** be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of the Defendants (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its their own names or as may be held, received or transferred for their benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c. That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
July 16, 2008

          FREEHILL HOGAN & MAHAR, LLP
          Attorneys for Plaintiff

By: _____
     Peter J. Gutowski (PG 2200)
     Gina M. Venezia (GV 1551)
     Pamela L. Schultz (PS 8675)
     80 Pine Street
     New York, NY 10005
     (212) 425-1900 / fax (212) 425-1901

## ATTORNEY VERIFICATION

State of New York   )
                    ) ss.:
County of New York  )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Peter J. Gutowski

Sworn to before me this
16th day of July 2008.

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/10

MAY 07,2008 03:59                    13307551811                                    Page 1



FIXTURE RECAP

CHARTERER
GERMAN LINES LTD,
SUITE B, 29 HARLEY STREET,
LONDON, UK, W1G 9QR

OWNER,
BRIARWOOD CORPORATION
6 RUE BELLOT, 1201
GENEVA, SWITZERLAND

VESSEL M/V RHOSUS
GNRL CARGO
PANAMA FLAG
1986 BLT
GLESS
DWT/GRT/NRT 3226 / 1900 / 964 MT
LOA/LBP/BEAM/DEPTH 69,60 / 61,00 / 12,00 / 6,50 M
SUMMER DRAFT 4,90 M
HOLDS / HATCHS 2 / 2
HATCH COAMING SIZE   22 M x 9 M x 2
GRAIN / BALE CAP    4136,23 / 3837,7 CBM
SINGLEDECK
IBS CLASS - PANDI
ALL IN FAITHFUL ABT WOG

- CONSUMPTION
LADEN   4.5 MTS IFO 60 CST/ PER DAY+MGO 0,5 MT/PER DAY  AT 10.0 KNOTS %20 MOL
WEATHER/SEA MARGIN    -WITHOUT GUARANTEE
IDLE AT PORT  0,3 MTS MGO /PER DAY   -WITHOUT GUARANTEE

WEATHER LIMITATION -- UP TO 5 BUFORT SCALE OTHERWISE MASTER RIGHT TO PROCEED
AN ANCHOR AND HIRE WILL CONTINUE COUNTING.

-DELIVERY ON DLOSP 1 SP AT OO BUSAH
 T/C: 05 20 MAY,2008
-PERIOD 60 DAYS +/- 10 DAYS IN CHOPT
-REDELIVERY DLOSPS 1 SP ANY TURKISH PORTS ATDNSHINC. Redly port tb advd with
14/10/8/5/3/2/1 dys notices
HIRE USD 4750 PDPR INCLOT PAYABLE EVERY 30 DAYS IN ADVANCE TO OWNERS
NOMINATED BANK ACCOUNT  1ST ADVANCE 30 DAYS HIRE AND BUNKER ON BOARD ON
DELIVERY TO BE PAID BY CHARTERERS WI 3 BDAYS UPON DELIVERY

OWNER'S BANK ACCOUNT
HSBC PRIVATE BANK (Suisse) S.A
Geneva,Switzerland
Swift: BLICCHGG@
Favour : BRIARWOOD CORPORATION
Acct N°: 1533380
Current account nr USD. 14168230
IBAN USD: CH7308689050914168230

-BUNKER CLAUSE: VESSEL TO BE DELIVERED WITH ... MT IFO, WITH ... MGO, WITH ... LUB
OIL ( QUANTITY TO BE INFORMED LATER BY E-MAIL)
 CHARTERER HAVE TO SEND SWIFT COPY / INVOICES OF BUNKER PAYMENT WITHIN
MAXIMUM 3 DAYS UPON SUPPLEMENT AND WILL PASS SUEZ PASSAGE PAYMENT SWIFT
COPY LATEST WITHIN 3 DAYS UPON PASSAGE

EXHIBIT A

APROXIMATE BUNKER ON DELIVERY TO BE ADVISED WITH 7 DAYS NOTICE, SAME QUANTITIES ON REDELIVERY
PRICES ON DELY/REDELY, TO BE MUTUALLY AGREED AS PER ISTANBUL SPOT MARKET.
-TRADING LIMITS: TRADING VIA GOOD SAFE PORTS/PLACES, ALWAYS AFLOAT, I.W.L., EXCLUDING UNITED NATIONS RESTRICTED ZONES,ZONES DECLARED WAR LIKE OR UNSAFE BY OWNERS' UNDERWRITTERS. CHARTERERS OPTION TO BREAK I.W.L AFTER HAVING OWNERS APROVAL. IN WHICH CASE CHRTRS SHALL PAY EXTRA INSURANCE PREMIUM SUPPORTED BY OWNERS INSURER INVOICE, BUT NOT EXCEEDING LONDON UNDERWRITERS STANDARD SCALE.
-TRADING EXCLUSIONS:
--TRADING EXCLUSIONS: trading: full med (excluding south cyprus, all european ports) / full black sea including danube river and other navigable waterways and tributaries / sea of azov during ice free season and always aaaa ports / west african ports but not south of dakar)
- VESSEL NOT TO BE CALLED AT ANY EUROPEAN PORTS
-THE VESSEL TO BE EMPLOYED FOR CARRIAGE OF MAINLY METALS/STEELS, GENERALS, BULK MINERALS, GRAIN, CHEMICALS, FERTILIZERS, CONCENTRATES, ORES, COALS, HARMLESS, LAWFUL CARGOES.

--cargo and trading exclusions: ammunition, arms, asphalt in bulk, asbestos, acids, blackpowder,blasting caps, bombs, bitumen, bones, borax, calcium hypochloride, caustic soda, detonators, dynamite, explosive of any kind, livestock, metal borings or cutting, motor spirit, motor blocks or turnings, naphtha, nuclear materials or its products, organic peroxides, pitch in bulk,petroleum or its products , radioactive products or waste, radio isotopes, saltpetre, tar or tar products, tnt, turoentine, unlawful merchand'se, yellow phosphorus, bulk cement, all kind of concentrates
When loading heavy cargoes such as steel coils, marble blocks or heavy project cargoes, such cargo not to exceed vessels tanktop/floor strenght
Scrap can be carried max 1 shipment during period of t/c
Scrap carriege/loading clause: -BULK HMLESS/NON RADIOACTIVE ,NON-DANGEROUS, NON OILY , EXCLUDING MOTOR BLOCKS ,TURNINGS, HEAVY PIECES, RADIOACTIVE PIECES .
- vsl is not fitted for carriage of cargoes requiring fittings and certificate of appendix ( b ) .
-FOR SCRAP CGOES SOFT LOADING CLS TO APPLY
-CHRTRS CONFIRM THAT NO MECHANICAL PRESS WILL BE USED TO PRESS THE CARGO INTO THE HOLDS.
-IN ORDER TO AVOID DAMAGES THROUGH DUMPING CARGO ON VESSEL'S TANKTOP, CARGO TO BE LOWERED AS CLOSE AS POSSIBLE TO THE VESSEL'S TANKTOP UNTIL A LAYER OF SUFFICIENT THICKNESS TO MASTER'S SATISFACTION IS BUILT ALL OVER VESSEL'S TANKTOP
- ALL CONCENTRATE CARGOES TO BE LOADED AS PER IMO REGULATIONS. BEFORE LOADING CARGO SPECIFICATIONS WILL BE DELIVERED TO MASTER AND MASTER HAVE TO MONITOR IF CARGO IS COMPLYING WITH SPECIFICATIONS AND IMO REGULATIONS.
- deck cargoes - not allowed

-- BILLS OF LADING CLAUSES:
A) THE MASTER SHALL SIGN THE BILLS OF LADING FOR CARGO AS PRESENSENTED IN STRICT CONFORMITY WITH MATES RECEIPT, HOWEVER THE CHARTERERS MAY SIGN BILLS OF LADING ON BEHALF OF THE MASTER WITH THE OWNERS PRIOR WRITTEN AUTHORITY, ALWAYS IN STRICT CONFORMITY WITH MATES RECEIPT.
B) ALL BILLS OF LADING SHALL BE WITHOUT PREJUDICE TO THIS CHARTER PARTY AND THE CHARTERERS SHALL INDEMNIFY THE OWNERS AGAINST ALL CONSEQUENCES OR LIABILITIES WHICH MAY ARISE FROM ANY INCONSISTENCY BETWEEN THIS CHARTER PARTY AND ANY BILLS OF LADING SIGNED BY THE CHARTERERS OR BY THE MASTER AT THEIR REQUEST.

QUANTITY AT LOAD/DISCH PORTS TO BE DETERMINED BY DRAFT SURVEY WHICH TO BE PERFORMED JOINTLY WITH MASTER, PANDI SURVEYOR AND SHIPPERS/RECEIVERS REPRESENTATIVES. BEFORE LOADING/DISCHARGING MASTER TO TENDER A LETTER TO SHIPPERS, RESPECTIVELY RECEIVERS, INVITING THEM TO PARTICIPATE IN JOINT DRAFT SURVEY.

BRIARWO(
CORPO(

MAY 07, 2008 03:59                    13307551811                              Page 3

IF CHARTERERS DECIDE TO USE OTHER METHOD OF DETERMINATION OF CARGO QUANTITY THAN DRAFT SURVEY, MASTER TO PERFORM DRAFT SURVEY IN ORDER TO CONTROL SHORE SCALE FIGURES AND TO INFORM CHRTRS IMMEDIATELY UPON ANY DISCREPANCY FOUND. MASTER NOT TO SIGN BS/L WITHOUT CHRTRS AUTHORIZATION IN CASE OF DIFFERENCES AROSE IN CARGO QUANTITY
OWNERS P&I CLUB TO INTERFERE IN CASE OF DIFFERENCES IN CARGO QUANTITIES BUT CHRTRS TO PAY ALL DEDUCTABLES IN ACCORDANCE WITH P AND I POLICY

C) CARGO CAN BE DISCHARGED OR CUSTOM BONDED AREA UNDER VOY CHRS RISK/RESPONSIBILITY AND EXPENSES AND WILL REMAIN UNDER DISCHARGING PORT AGENT CUSTODY, SAME WILL NOT RELEASED BY THE DISCHARGING PORT AGENTS UNTIL PRESENTATION OF ORIGINAL ENDORSED BS/L. SAME BS/L TO BE IMMY MAILED TO OWS/MANAGERS (SARAY SHIPPING) ADDRESS.

VSL TO WORK DAY AND NIGHT IF REQUIRED BY CHARTERERS DULY RIGGED BY CREW AT ALL TIME AS REQUIRED BY THE CHARTERERS. ALL OPENING/CLOSING HATCHES TO BE DONE BY CREW(IF PERMITTED BY LOCAL REGULATIONS) WHENEVER REQUIRED BY CHARTERERS
VSL'S HOLDS ON DLY TO BE CLEAN/SWEPT/WASHED DOWN BY FW/DRIED UP SO AS TO REC CHRS' INT CGOS IN ALL RESPECTS, FREE OF SALT, LOOSE RUST SCALE, PREVIOUS CARGO RESIDUE AND ANY INFESTATION TO THE CHARTER'S SATISFACTION. VESSEL HOLDS TO BE READY IN ALL RESPECTS FOR LOADING OF NEXT CARGOES BEFORE ARRIVAL AT LOAD PORT AND TENDERING NOTICE OF READINESS FOR INTERIM VOYAGES. IF VSL FAILS TO PASS ANY HOLD INSPECTION AS ABV (FOR THE 1ST AND ALL INTERIM VOYAGES), incase of any dispute Ows by right to appoint their Own Survey and final decision to taken by the Chtrs / Owners and if necessary one other independent Survey. If all parties can not feel any solution then independent survey decision th final. Independent survey costs tb shared 50/50 between Owners and Chtrs. THE VSL SHOULD BE PLACED OFF-HIRE FROM THE TIME OF FAILURE OF INSPECTION UNTIL THE VSL PASS THE SAME INSPECTION AGAIN. ANY EXTRA EXPENSES RELATED TO BE FOR OWNRS ACCNT.
- FOR INTERMEDIATE HOLD'S CLEANING CHRTRS TO PAY
usd 1000 for intermediate hold cleanining + WASHING for all normal cargoes
usd 1000 for dunnage removal + SWEAPING
communication/VICTUALING/ENTERTIMENT USD 2500 PER MONTH/PRO RATA
ARB/GA, IF ANY, IN LONDON, ENGLISH LAW TO APPLY / Y-A RULES 74 WITH LATEST AMENDMENTS
-2.5% ADDCOM + 1.25% BROKERAGE TO ALLIMAR SHIPBROKERS SRL + 1.25 % COMM FOR SARAY
OWISE CLEAN TYPE C/P TERMS + CONDITIONS
STEM IN ORDER
END

DATE: MAY 05, 2008

ON BEHALF OF CHARTERERS          ON BEHALF OF OWNERS

GERMAN TIDES LTD. UK              BRIARWOOD CORPORATION

M MAILLIS                         BULENT AYMEN

[signature and seal]              BRIARWOOD
                                  CORPORATION